IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UMF CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 12-9156 |
| | § | |
| NORWEX USA, INC., and | § | |
| NORWEX ENVIRO PRODUCTS, INC., | § | |
| | § | |
| Defendants. | § | |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. PROCEDURAL BACKGROUND .................................................................................. 2

III. ARGUMENT .................................................................................................................... 4

    A) UMF lacks standing to bring this action ................................................................... 4

        1. Legal standard ....................................................................................................... 4

        2. UMF is not a licensee of the '455 patent .............................................................. 7

        3. Even if UMF is an exclusive licensee, Sweports is a necessary party .................. 9

    B) By bringing this action, UMF has violated the automatic stay ................................ 11

IV. PRAYER ......................................................................................................................... 12

## TABLE OF AUTHORITIES

**CASES**

*Abbott Laboratories v. Diamedix Corp.*,
47 F.3d 1128 (Fed. Cir. 1995).................................................................................. 10

*Air Safety, Inc. v. Teachers Realty Corp.*,
706 N.E.2d 882 (Ill. 1999)........................................................................................ 6

*Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*,
604 F.3d 1354 (Fed. Cir. 2010)........................................................................5-6, 9-10

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
572 F.3d 440 (7th Cir. 2009).................................................................................. 4-5

*AsymmetRx, Inc. v. Biocare Med., LLC*,
582 F.3d 1314 (Fed. Cir. 2009)................................................................................ 10

*Evers v. Astrue*,
536 F.3d 651 (7th Cir. 2008).................................................................................. 4-5

*In re Mahurkar Double Lumen Hemodialysis Catheter Patent Lit.*,
140 B.R. 969 (N.D. Ill. 1992) .................................................................................. 12

*Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*,
248 F.3d 1333 (Fed. Cir. 2001)................................................................................ 10

*Int'l Gamco, Inc. v. Multimedia Games, Inc.*,
504 F.3d 1273 (Fed. Cir. 2007)................................................................................ 5

*Mar. Elec. Co., Inc. v. United Jersey Bank*,
959 F.2d 1194 (3rd Cir. 1991) ................................................................................ 12

*Morrow v. Microsoft Corp.*,
499 F.3d 1332 (Fed. Cir. 2007)................................................................................ 5

*NanoeXa Corp. v. Univ. of Chi., No. 10-7177*,
2011 U.S. Dist. LEXIS 39973 (N.D. Ill. April 13, 2011) ............................................. 6

*Prima Tek II, L.L.C. v. A-Roo Co.*,
222 F.3d 1372 (Fed. Cir. 2000)................................................................................ 5

*Sicom Sys., Ltd. v. Agilent Technologies, Inc.*,
427 F.3d 971 (Fed. Cir. 2005).......................................................................... 4, 6, 9-10

*United Phosphorus, Ltd. v. Angus Chem. Co.*,
322 F.3d 942 (7th Cir. 2003) .................................................................................................. 4

*Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*,
944 F.2d 870 (Fed. Cir. 1991) ................................................................................................ 6

*WiAV Solutions LLC v. Motorola, Inc.*,
631 F.3d 1257 (Fed. Cir. 2010) ........................................................................................... 5-6

**STATUTES**

11 U.S.C. § 362 ................................................................................................................. 1, 11

28 U.S.C. § 1404 ...................................................................................................................... 2

35 U.S.C. § 100 ........................................................................................................................ 5

35 U.S.C. § 271 ........................................................................................................................ 5

35 U.S.C. § 281 ........................................................................................................................ 5

**RULES**

Fed. R. Civ. P. 12 ............................................................................................................ 1, 4, 11

## I. INTRODUCTION

Plaintiff UMF Corporation ("UMF") alleges in its complaint for infringement of U.S. Patent No. 6,258,455 ("the '455 patent") that it is the exclusive licensee of the '455 patent. *See* UMF's Complaint at ¶ 5 (Dkt. No. 1). It is not. The October 24, 2000 license agreement (the "License") between Sweports, Ltd. ("Sweports"), the owner of the '455 patent, and UMF, grants UMF exclusive rights with respect to certain defined products. *See* Exhibit "A," the License. However, it does not expressly grant UMF any rights in any enumerated patent, including the '455 patent. Additionally, the License (to the extent any rights in the '455 patent were transferred) does not transfer all rights to bring suit to UMF sufficient to constitute an exclusive license. Therefore, as a factual matter, UMF lacks constitutional standing to sue Defendants Norwex USA, Inc. and Norwex Enviro Products, Inc. (collectively "Defendants") for patent infringement and its complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

Significantly, Sweports is currently the debtor in a pending Chapter 11 bankruptcy. In the bankruptcy proceeding, Sweports sought relief from the automatic bankruptcy stay, 11 U.S.C. § 362(a), so that it could litigate its claim for infringement of the '455 patent against Defendants. Sweports certainly knew at that time that UMF did not have standing to litigate the matter independently. The Bankruptcy Court denied Sweports' request, and Sweports and UMF are now trying to maneuver around the Bankruptcy Court's ruling and litigate this case on the '455 patent against Defendants by naming UMF as the Plaintiff.. The '455 patent is an asset of Sweports's bankruptcy estate; therefore, even if UMF had standing under the License to bring this lawsuit alone – which it does not – UMF's efforts violate the automatic stay. Accordingly, UMF's complaint should be dismissed.

## II. PROCEDURAL BACKGROUND

On December 30, 2011, Defendants initiated this dispute with UMF and Sweports by filing suit against them in the United States District Court for the Northern District of Texas, Dallas Division, Case No. 3:11-cv-03605-F (the "Texas Case"), seeking a declaratory judgment that Defendants were not infringing the '455 patent and that the '455 is invalid or unenforceable. *See* Exhibit "B," Complaint in the Texas Case. Defendants sought declaratory judgment of non-infringement in the Texas case in response to a demand letter they received from UMF and Sweports claiming that Defendants were infringing the '455 patent. *See id.* A copy of UMF's and Sweports' demand letter was attached as an exhibit to Defendants' Complaint in the Texas Case and, importantly, Sweports plainly stated in the letter that it "owns all right, title and interest in the '455 patent." *See id.* at Exhibit A.

UMF and Sweports moved to transfer the Texas Case to the Northern District of Illinois based on convenience under 28 U.S.C. § 1404(a). Defendants decided not to oppose the transfer, and on March 15, 2012, the Texas Case was transferred to the United States District Court for the Northern District of Illinois, Eastern Division, bearing Case No. 12-CV-01933 (the "Prior Illinois Case"). *See* Exhibit "C," March 15, 2012 Order of Transfer.

Shortly thereafter, on April 9, 2012, an involuntary bankruptcy petition under Chapter 11 of the United States Bankruptcy Code was filed against Sweports in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 12-14254 (the "Bankruptcy Case").

On June 21, 2012, Sweports filed a motion for relief from the automatic stay in the Bankruptcy Court in order to continue to litigate against Defendants regarding the '455 patent in the Prior Illinois Case. *See* Exhibit "D," Sweports's Motion for Relief From Automatic Stay. In

2

its motion, Sweports refers to itself as the owner of the '455 patent and states that it actively takes steps and measures against third parties such as Defendants in order to protect the '455 patent from infringement. *See* id. at ¶¶ 7-12. Sweports asserted its intention to have the automatic bankruptcy stay lifted to protect its asset – the '455 patent – by seeking a finding of infringement against Defendants in the Prior Illinois Case. *See* id. at ¶¶ 13-15, 19, 22-26.

On August 15, 2012, Bankruptcy Judge Goldgar entered a Memorandum Opinion denying Sweports's motion for relief from the automatic stay in the Bankruptcy Case. *See* Exhibit "E," August 15, 2012 Memorandum Opinion. Significantly, Judge Goldgar specifically found that the '455 patent "constitutes property of the Sweports bankruptcy estate." *See* id. at Pg. 8. He further held that Sweports did not have the authority to have the stay lifted to place the '455 patent at the mercy of challengers like Defendants. *See* id.

In light of the foregoing ruling, Defendants filed a notice of voluntary dismissal without prejudice in the Prior Illinois Case under Federal Rule of Civil Procedure 41(a)(1) a mere week later. *See* Exhibit "F," August 22, 2012 Notice of Voluntary Dismissal.

On November 15, 2012, with the Bankruptcy Case against Sweports still pending, UMF filed the instant complaint against Defendants alleging infringement of the '455 patent. *See* Complaint (Dkt. No. 1). In its complaint, UMF admits that Sweports is the owner of the '455 patent and that Sweports is currently in bankruptcy; however, UMF claims that it is the exclusive licensee of the '455 patent with the right to sue Defendants for infringement of the '455 patent, despite the foregoing ruling in the Bankruptcy Case. *See* id. at ¶¶ 5, 14-15, 27.

### III.  ARGUMENT

**A)  UMF lacks standing to bring this action.**

    1.  <u>Legal standard</u>.

3

"Standing to sue is a threshold requirement in every federal action," and must be present at the time the action is brought. *Sicom Sys., Ltd. v. Agilent Technologies, Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005). The party bringing the action must establish standing. *Id.* If the plaintiff lacks standing, a defendant may bring a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009). Challenges to jurisdiction can be either facial or factual. *Id.* at 443. "Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction." *Id.* (emphasis in original) (citations omitted). When a facial challenge is made to subject matter jurisdiction, "the court does not look beyond the allegations in the complaint, which are taken as true for the purposes of the motion." *Id.* at 444 (internal citations omitted).

In contrast, a factual challenge to subject matter jurisdiction is based on the contention that the complaint is sufficient, but "there is *in fact* no subject matter jurisdiction." *United Phosphorus, Ltd. v. Angus Chem. Co.,* 322 F.3d 942, 946 (7th Cir. 2003) (emphasis in original). When a defendant makes a factual attack against jurisdiction, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Evers v. Astrue,* 536 F.3d 651, 656-57 (7th Cir. 2008) (internal quotations omitted). In this instance, "plaintiff bears the burden of coming forward with competent proof that standing exists." *Apex Digital,* 572 F.3d at 444.

The source of Article III standing for a plaintiff in a patent infringement action is the Patent Act. *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1338-39 (Fed. Cir. 2007). The Patent Act states that a patentee has the right to initiate a civil action for infringement. 35 U.S.C. § 281

(2006). "Patentee" is defined to include both the patent owner and its successors in title. 35 U.S.C. § 100(d) (2006).

Ordinarily, an exclusive licensee must sue with the patent owner, but "an exclusive licensee has standing to sue in its own name, without joining the patent holder," when "'all substantial rights' in the patent are transferred" because in such a case, the "exclusive licensee is effectively an assignee." *Id; Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1273, 1276 (Fed. Cir. 2007) (citing *Prima Tek II, L.L.C. v. A- Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000)); *See also, Alfred E. Mann Found. For Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1359 (Fed. Cir. 2010) (where an exclusive license transfers less than "all substantial rights" in the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an indispensable party who must be joined).

In contrast, a "bare licensee holds nothing more than a promise from the patentee that the patentee will not sue the licensee for practicing the patented invention." *WiAV Solutions LLC*, 631 F.3d at 1265. "Such a licensee suffers no legal injury from infringement and thus, has no standing to bring suit or even join in a suit with the patentee." *Id.*; *see also Sicom Sys.*, 427 F.3d at 976 ("A nonexclusive license confers no constitutional standing on the licensee to bring suit or even to join a suit with the patentee because a nonexclusive licensee suffers no legal injury from infringement.").

To determine the nature of a party's rights in a patent, courts examine the substance of what was granted by the agreement and ascertain the intention of the parties. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 874 (Fed. Cir. 1991). The license agreement between Sweports and UMF is governed by Illinois law. *See* Exhibit "A" at ¶19. "Under Illinois law, '[a]n agreement, when reduced to writing, must be presumed to speak

the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.'" *NanoeXa Corp. v. Univ. of Chi.*, No. 10-7177, 2011 U.S. Dist. LEXIS 39973, at *9 (N.D. Ill. April 13, 2011) (quoting *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999)). "This is particularly true where . . . the contract includes an integration clause." *Id*; *see also* Exhibit "A" at ¶15 (stating that License is the "Entire Agreement" between Sweports and UMF).

In addition, the nature and scope of the exclusive licensee's purported right to bring suit, together with the nature and scope of any right to sue purportedly retained by the licensor, is frequently the most important factor in determining whether an exclusive license transfers sufficient rights to render the licensee the owner or assignee of the patent. *Alfred E. Mann Found*, 604 F.3d at 1361.

2. UMF is not a licensee of the '455 Patent.

Again, UMF asserts in its complaint that it is the exclusive licensee of the '455 patent. *See* Complaint at ¶ 5 (Dkt. No. 1). But the License clearly states that UMF's exclusive rights are with respect to a line of products, not the '455 patent, or any specific patent for that matter. The License gives UMF the "sole and exclusive right to manufacture, to have manufactured for it, to use and to sell the ITEM." *See* Exhibit "A" at ¶ 1. The License further clarifies that "LICENSOR is granting UMF an exclusive license to ITEM," which refers to "any and all products developed by LICENSOR under the PerfectClean brand name INCLUDING BUT NOT LIMITED TO ANTIMICROBIAL micro-denier textiles and associated hardware which is described on Schedule A." *See id*. at ¶ 21. Schedule A describes these items as "all current and

6

future products developed under the PerfectClean brand including any and all woven and knitted textile products combining antimicrobial technologies/chemistry with micro- denier fibers." *See id*. at Schedule A. Thus, based on the plain language of the agreement itself, the License provides UMF with exclusive rights to manufacture, use and sell a line of products, not exclusive rights to litigate under the '455 patent.

In fact, the License never identifies any specific patent numbers or patent application numbers. If the parties intended the License to cover the application that led to the '455 patent, they could have, and would have, specifically identified the application in the License. UMF is granted the exclusive right to "make, use and sell any invention which is embodied in the ITEM or which is the ***subject of any patents to issue from any patent applications which may be filed on the ITEM***." *See id* at ¶ 1 (emphasis added). The use of the future tense phrase "may be filed," conveys rights only in patent applications filed *after* the date of the License, October 24, 2000. But the application that issued as the '455 patent was filed over a year *before* the License, on March 29, 1999. *See* Exhibit "G," Patent No. 6,258,455. As a result, the '455 patent is not covered under the License. Because this is the only conveyance of rights in any patents set forth in the License, the plain language of the License not only fails to expressly grant UMF any rights in the '455 patent, it fails to even infer an attempt to grant such rights.

While UMF may allege that the licensed products are manufactured within the boundaries of one or more claims of a patent, including the '455 patent, the inverse may not be true. A licensed product does not define the metes and bounds of a patent claim, nor can it define the legal boundaries defined by the several claims of any patent. Whatever rights may have been transferred by the License, it could not have solely and exclusively licensed all rights to the then pending patent application by defining a product category, without identifying the specific patent

7

or patent application, or the scope of any claims. UMF's own complaint recognizes the divergent relationship between the product and patent rights:

> Pursuant to a written license agreement with Sweports, UMF is the exclusive licensee of the 455 Patent in connection with any and all woven and knitted textile products combining antimicrobial technologies or chemistry with micro-dernier fibers. *See* Complaint at ¶ 5 (Dkt. No. 1).

Significantly, the License makes no mention of the '455 patent, or any specific patent applications, other than future applications that had not been filed prior to the execution of the License. Admittedly, Sweports owns all right, title and interest in the '455 patent. Ex. B and Ex. A thereto. UMF cannot even establish the threshold issue of whether it is a licensee of the '455 patent, let alone the requirement that it be an exclusive licensee permitted to proceed independently with this litigation.

3. <u>Even if UMF is an exclusive licensee, Sweports is a necessary party</u>.

UMF is at best a bare or non-exclusive licensee of the '455 patent. Sweports simply promised UMF that it would not assert the future patents or patent applications against UMF's activities involving the ITEM. Such a nonexclusive licensee has no constitutional standing to assert infringement of the '455 patent against any party, regardless of whether Sweports is a named party in the action. *Sicom Sys.*, 427 F.3d at 976.

Further, as noted above, where an exclusive license transfers less than "all substantial rights" in the patents to the exclusive licensee, the exclusive licensee may still be permitted to bring suit against infringers, but the patent owner is an indispensable party who must be joined. *Alfred E. Mann*, 604 F.3d at 1359. Here, UMF does not qualify as an exclusive licensee. But even it if does, Sweports did not transfer all substantial rights in the '455 patent to UMF; therefore, Sweports must be made a party for UMF to bring this suit against Defendants.

8

The License provides the following with regard to UMF's "right to sue" for infringement:

"In the event of infringement of any patent or other right that may be issued to or owned by [Sweports] on the ITEM, UMF may prosecute an infringement suit, in the name of [Sweports], if appropriate, as determined in the sole discretion of UMF after notice to [Sweports] of that intention. UMF may then select legal counsel and shall bear all the legal fees and costs. The balance of any recovery (in excess of attorney's fees, costs and other out-of-pocket expenses) shall be divided 80/20 between UMF and [Sweports], respectively. If [Sweports] becomes aware of infringement described above, [Sweports] may notify UMF of its desire to prosecute an infringement suit. If UMF has not commenced the prosecution of an infringement action within thirty (30) days of receipt of [Sweports's] notice, [Sweports] may prosecute the suit. If [Sweports] prosecutes the suit, it may select legal counsel and shall pay all the legal fees and costs or other out-of-pocket expense) shall be divided 80/20 between [Sweports] and UMF, respectively."

*See* Exhibit "A," at ¶ 5. Under prevailing case law, the foregoing language in the License precludes a finding that it received all substantial rights from UMF such that the License could be considered a virtual assignment of the '455 patent (again putting aside the threshold issue of whether the License even covers the '455 patent). *See, e.g., Alfred E. Mann*, 604 F.3d at 1362-63 (holding that all substantial rights had not been transferred under license where licensor retained right to sue an infringer only after licensee chooses not to sue the infringer, and once its right to sue an infringer activates, licensor has complete discretion to decide what trial strategy and tactics to employ); *See also, Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (holding that retained rights were sufficient to preclude license agreement from being deemed a virtual assignment of the patents-in-suit where licensee had the "right of first refusal in suing alleged infringers," but if the licensee "decline[d] to so do, [the licensor] ha[d] the right to prosecute its own infringement action"); *See also AsymmetRx, Inc. v. Biocare Med., LLC,* 582 F.3d 1314, 1321 (Fed. Cir. 2009) (holding that retained litigation rights were sufficient to preserve licensor's ownership of patents-in-suit even when those rights failed to give the licensor complete control over the litigation it initiated; instead, the licensor and licensee would

9

have joint control of the litigation); *See also Sicom Sys.*, 427 F.3d at 978-79 (holding that licensor maintained ownership of patents-in-suit when licensor retained the right to sue only noncommercial accused infringers, having transferred to the licensee the sole and unconditional right to sue commercial infringers).

Similar to the licensees in the cases cited above, UMF's right to sue comes with many conditions. For example, UMF is required to notify of Sweports of any intention to file suit and may prosecute any suits in Sweports's name. Further, if UMF does prosecute a suit, a significant portion of any recovery goes to Sweports. If UMF does not institute a suit upon notice by Sweports of possible infringement, then Sweports retains the right to do so. All of these factors show that the License transferred less than "all substantial rights" in the '455 Patent to UMF, meaning that UMF was required to include Sweports in any infringement suit involving the '455 patent. *See Intellectual Prop. Dev., Inc. v. TCI Cablevision of California, Inc.*, 248 F.3d 1333, 1347-48 (Fed. Cir. 2001). Indeed, Sweports admittedly knew it had to be a party to its infringement claims against Defendants, as shown by Sweports's unsuccessful motion for relief from the bankruptcy stay to litigate the '455 patent. *See* Exhibit "D."

Since Sweports is not a party to this lawsuit – and in fact cannot be a party due to its pending bankruptcy – the only proper remedy is dismissal. Accordingly, Defendants respectfully move the Court to dismiss UMF's complaint against them for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**B)** **By bringing this action, UMF has violated the automatic stay.**

As stated above, Sweports unsuccessfully tried to have the automatic stay lifted so that *it* could prosecute its claims against Defendants for infringement of the '455 patent. *See* Exhibit "D." The Bankruptcy Court not only denied Sweports's request, but also specifically held that

the '455 patent is indeed an asset of the Sweports bankruptcy estate. *See* Exhibit "E." Unsatisfied with that ruling, Sweports improperly seeks to indirectly do what it could not directly - have its licensee – UMF – circumvent the ruling by asserting that it is an exclusive licensee of the '455 patent and thus has the right to sue for infringement of that patent.

Initially, UMF does not have standing to sue for the reasons stated above. But even if UMF technically does have standing to assert a claim for infringement in its alleged role as exclusive licensee, it cannot simply ignore the Bankruptcy Court's ruling. License agreements are executory contracts and as such, the '455 patent is an asset of the Sweports Bankruptcy Estate. The Bankruptcy Court confirmed this in its ruling on Sweports' motion to lift the auotomatic stay. Thus, as property of the estate, the '455 patent is protected by the automatic stay under 11 U.S.C. § 362(a) immediately upon commencement of the bankruptcy case. As such, any claim to recover damages as a result of infringement of an asset of the Sweports Bankruptcy Estate cannot be asserted here because it would violate the automatic bankruptcy stay. 11 U.S.C. § 362(a).

Indeed, one of the reasons behind the automatic bankruptcy stay is to protect creditors from parties acting individually in self-interest to obtain payment to the detriment of creditors. *See Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3rd Cir. 1991). Thus, bankruptcy courts will enforce the automatic stay if a ruling on a patent infringement case will diminish the collective value of the assets. *See In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 975–76 (N.D. Ill. 1992). In addition, the court in *In re Mahurkar* stated that bankruptcy is a collective proceeding. *Id.* In other words, if any action by a licensee has an inevitable effect on the property of the estate, the licensee is in violation of the automatic stay.

11

Simply put, if UMF were allowed to prosecute a claim for infringement of the '455 patent – an asset belonging to Sweports' Bankruptcy Estate – and to collect damages from any ultimate finding of infringement, then all of Sweports's creditors will be harmed. The bankruptcy laws – including the automatic stay – exist to protect creditors from exactly this type of behavior. *See Mar. Elec. Co.*, 959 F.2d at 1204. Thus, an alleged licensee like UMF cannot ignore the Bankruptcy Court's ruling and file a patent infringement case in violation of the automatic stay.

## IV.  PRAYER

Defendants Norwex USA, Inc. and Norwex Enviro Products, Inc. pray that the Court grants their motion, dismiss Plaintiff UMF Corporation's complaint against them, and for such other relief to which they may be justly entitled.

Dated: December 18, 2012.

                        Respectfully submitted,

                        *\s\ Jonathan P. Froemel*
                        Jonathan P. Froemel
                        jfroemel@btlaw.com
                        Nikita Williams
                        Nikita.williams@btlaw.com

                        BARNES & THORNBURG, LLP
                        One North Wacker Drive, Suite 4400
                        Chicago, Illinois 60606
                        (312) 357-1313 Phone
                        (312) 759-5646 Fax


John G. Fischer (PRO HACE VICE APPLICATION TO BE SUBMITTED)
john.fischer@solidcounsel.com
C. Brenton Kugler (PRO HACE VICE APPLICATION TO BE SUBMITTED)
brent.kugler@solidcounsel.com
Eric C. Wood (PRO HACE VICE APPLICATION TO BE SUBMITTED)
eric.wood@solidcounsel.com

SCHEEF & STONE, LLP
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4200 Phone
(214) 706-4242 Fax

                        ATTORNEYS FOR DEFENDANTS
                        NORWEX USA, INC. AND
                        NORWEX ENVIRO PRODUCTS, INC.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 18, 2012, the foregoing was submitted for filing to the Clerk of the District Court by using CM/ECF, which will send a Notice of Electronic Filing to the following CM/ECF participants:

David B. Goodman
Carrie E. Davenport
SHAW FISHMAN GLANTZ & TOWBIN LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60654

                                                *\s\ Jonathan P. Froemel*
                                                Jonathan P. Froemel