IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UMF CORPORATION, | |
| Plaintiff, | |
| | Case No. 12 C 9156 |
| v. | Hon. Harry D. Leinenweber |
| NORWEX USA, INC. and NORWEX ENVIRO PRODUCTS, INC., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Norwex USA, Inc. and Norwex Enviro Products, Inc.'s Motion to Dismiss. For the reasons stated herein, the Motion is granted.

### I.   FACTUAL BACKGROUND

In this case for monetary and injunctive relief, Plaintiff UMF Corporation, (hereinafter, "UMF" or "Plaintiff") contends that Defendants Norwex USA, Inc. and Norwex Enviro Products, Inc. are infringing on Plaintiffs' United States Patent No. 6,258,455 (the "'455 Patent").

### A.   '455 Patent

The '455 Patent is titled "Antimicrobial Ultra-Microfiber Clothe." Pl.'s Resp. in Opp. to Def.'s Mot. to Dismiss at 2 n.3. It relates to an invention of a knitted cleaning cloth that is comprised of antimicrobial fiber combined with ultra-microfiber,

microfiber, or microfilament. *Id.* The '455 Patent was issued by the United States Patent and Trademark Office on July 10, 2001.

## B. The Parties

Sweports Ltd. ("Sweports") is a Delaware corporation and the owner of the '455 Patent. Compl. at 3.

UMF is an Illinois corporation in the business of researching and developing high performance textiles for commercial cleaning. UMF contends it has an exclusive license to the '455 Patent pursuant to an Exclusive Licensing Agreement UMF entered into with Sweports in October 2000.

Norwex USA, Inc. and Norwex Enviro Products Inc. (hereinafter, collectively, the "Defendants" or "Norwex") are affiliated direct-sales companies that market and sell environment-friendly cleaning products. Among their various cleaning products, Norwex sells microfiber cloths.

## C. Procedural History

In approximately November 2011, Norwex received a cease and desist letter from Sweports and UMF. Allegedly, the letter explained that Sweports was the owner of the '455 Patent and that UMF had the exclusive license to it. The letter demanded that Norwex cease to market certain microfiber cloths because such marketing was infringing on the '455 Patent.

After receiving the letter, Norwex filed suit in the United States District Court for the Northern District of Texas in

December 2011. In its Complaint, Norwex named Sweports and UMF as defendants and sought a declaratory judgment that it was not infringing on the '455 Patent. *See* Defs.' Mot. to Dismiss; Ex. B. In response to the Complaint, UMF and Sweports moved to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). The district court in Texas granted this motion and on March 15, 2012, the case was transferred to Chief Judge James F. Holderman in the Northern District of Illinois.

Shortly after the transfer, however, three creditors filed an involuntary bankruptcy petition against Sweports. *See In re Sweports*, Ltd., 476 B.R. 540 (N.D. Ill. 2012). The bankruptcy petition had the effect of staying Norwex's patent action before Chief Judge Holderman. On June 21, 2012, Sweports filed a motion in bankruptcy court seeking relief from the automatic stay. Specifically, Sweports requested that the bankruptcy court lift the stay so it could continue to litigate the patent action.

On August 15, 2012, Bankruptcy Judge A. Benjamin Goldgar denied Sweports' motion and determined that the '455 Patent was included in Sweports' bankruptcy estate. *Id.* at 545. In light of this ruling, Norwex filed a notice of voluntary dismissal of the patent action before Chief Judge Holderman.

On November 15, 2012, UMF filed the instant suit in this Court. In UMF's Complaint, it contends that Norwex is infringing on the '455 Patent. On December 18, 2012, Norwex responded to

- 3 -

UMF's Complaint with a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). In its Motion, Norwex argues UMF lacks standing to pursue an infringement claim.

## II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(1) allows the Court to dismiss a case for lack of jurisdiction over the subject matter. FED. R. CIV. P. 12(b)(1). Standing to sue is a threshold jurisdictional requirement in every federal action. *Sicom Sys., Ltd. v. Agilent Techs., Inc.,* 427 F.3d 971, 975 (Fed. Cir. 2005). Rule 12(b)(1) addresses standing issues, and federal courts "may not grant relief when standing does not exist." *Heartland Direct, Inc. v. Chevron U.S.A. Inc.,* No. 06 C 1029, 2006 WL 2524139 at *2 (N.D. Ill. Aug. 30, 2006).

When considering a Rule 12(b)(1) motion challenging subject matter jurisdiction, district courts may look beyond the pleadings and consider all competent evidence. *Hay v. Indiana State Bd. of Tax Comm'rs,* 312 F.3d 876, 879 (7th Cir. 2002). Because standing is an indispensable part of a plaintiff's case and more than a mere pleading requirement, a plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Id.* quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

- 4 -

### III. <u>DISCUSSION</u>

In its Motion, Norwex raises two distinct arguments. First, Norwex claims UMF is not an exclusive licensee of the '455 Patent and therefore not a patentee with standing to pursue an infringement claim. Alternatively, Norwex argues that even if UMF is an exclusive licensee, Sweports is an indispensable party who must be joined since Sweports did not transfer UMF all substantial rights in the '455 Patent. The Court will address each argument in turn.

### A. Standing & 35 U.S.C. § 281

"Standing to sue for patent infringement derives from the Patent Act." *Prima Tek II, LLC v. A-Roo Co.*, 222 F.3d 1372, 1377 (Fed. Cir. 2000). The Patent Act provides that "[a] patentee shall have remedy by civil action for infringement of a patent." 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors in title to the patentee." *Id.* § 100(d). Exclusive licensees holding all substantial rights to the patent satisfy this standard. *Prima Tek II, L.L.C. v. A-Roo Co.,* 222 F.3d 1372, 1377 (Fed. Cir. 2000).

### 1. *The Exclusive Licensing Agreement and '455 Patent*

Norwex argues that the Exclusive Licensing Agreement ("the Agreement") between UMF and Sweports does not include the '455 Patent because the Agreement refers to a line of products, not a patent. Norwex contends that since the Agreement never references

the '455 Patent specifically, UMF cannot have an exclusive license
to it.

In relevant part, the Agreement grants:

> . . . UMF the sole and exclusive right to
> manufacture, to have manufactured for it, to
> use and to sell the ITEM, and to sublicense
> its rights, throughout the world, and in
> addition, grants UMF the exclusive right to
> make, use and sell any invention which is
> embodied in the ITEM or which is the subject
> of any patents to issue from any patent
> applications which may be filed on the ITEM,
> LICENSOR [Sweports] also grants to UMF all
> merchandising rights in the ITEM including
> packaging, trademarks and copyrights.

Pl.'s Resp. in Opp. to Defs.' Mot.; Ex. A [ECF No. 16-1 Page ID
#182].

"ITEM" is described in an attachment to the Agreement. The
attachment defines "ITEM" as "[a]ll PerfectClean products including
Antimicrobial Textiles and associated hardware components." *Id.*
[ECF No. 16-1, Page ID #186]. In addition, it provides that "All
PerfectClean products" include "[a]ll current and future products
developed under the PerfectClean brand including any and all woven
and knitted textile products combining technologies/chemistry with
micro-denier fibers." *Id.*

In light of the aforementioned language, the Court finds the
Agreement between the parties grants UMF an exclusive license
relating to the '455 Patent. The Court rejects Norwex's argument
that UMF is not a licensee since the Agreement fails to reference
the '455 Patent. The Agreement is clear in its grant to UMF "to

- 6 -

make, use and sell *any invention* which is embodied in the ITEM."
Pl.'s Resp. in Opp. to Defs.' Mot.; Ex. A [ECF No. 16-1 Page ID
#182] (emphasis added). As previously mentioned, the '455 Patent
is a patent for cleaning cloths comprised of antimicrobial fiber.
Thus, the Court considers the '455 Patent an invention embodied in
the "ITEM." Because of this, the Court finds UMF is an exclusive
licensee of the '455 Patent.

### 2. Transfer of "All Substantial Rights"

Norwex also argues that even if the Agreement constitutes an
exclusive license to UMF for the '455 Patent, UMF still lacks
standing. Norwex claims that since Sweports did not transfer "all
substantial rights" of the '455 Patent to UMF, Sweports is a
necessary party who must be joined for the action to proceed.

If a patentee transfers "all substantial rights" under the
patent, the transfer constitutes an assignment, and the assignee is
deemed "the effective patentee . . . for purposes of holding
constitutional standing to sue another for patent infringement in
its own name." *Sicom,* 427 F.3d at 976. Licensees that do not
receive "all substantial rights" to a patent through a licensing
agreement may still have standing to sue in some circumstances. "A
party that is neither the legal owner of the patent nor the
transferee of all substantial rights in the patent still has
standing to sue for infringement if that party has a legally
protected interest in the patent created by the Patent Act, so that

it can be said to suffer legal injury from an act of infringement." *Propat Int'l Corp. v. RPost, Inc.,* 473 F.3d 1187, 1193 (Fed. Cir. 2007).

Exclusive licensees, meaning those parties with "the exclusive right to make, use, or vend the invention," have this type of interest. *Id.* However, "[u]nlike the patentee or the transferee of all substantial rights in the patent . . . an exclusive licensee ordinarily may not sue in its name alone, but must join the patent owner in an action brought against an accused infringer." *Id.*

In order to determine whether a licensing agreement provides a licensee with "all substantial rights" in a patent the courts examine a number of factors. *See*, *generally*, *Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010). These factors include:

> (1) whether the licensor has the power to bar the licensee from transferring its interest to a third party; (2) whether the licensor maintains an equity interest in the proceeds of licensing and litigation activities; (3) whether the licensor has a right to notice of licensing decisions, and, if so, the right to veto them; (4) whether the licensor has a right to notice of litigation decisions, and, if so, the right to veto them; (5) whether the licensor has the ability to terminate the licensing agreement in certain circumstances; and (6) whether the licensee or licensor bears the obligation to maintain the patent.

*New Medium Technologies LLC v. Barco N.V.*, 644 F.Supp.2d 1049, 1051-53 (N.D. Ill. 2007) (citing *Propat Int'l Corp.*, 473 F.3d at 1193).

"Frequently . . . the nature and scope of the exclusive licensee's purported right to bring suit together with the nature and scope of any right to sue purportedly retained by the licensor is the most important consideration" in determining whether all substantial rights have been transferred. *Alfred E. Mann Found.*, 604 F.3d at 1361. If the "licensor retains a right to sue accused infringers, that right often precludes a finding that all substantial rights were transferred to the licensee." *Id.*

In this case, the Agreement has specific provisions governing infringement litigation. In relevant part the Agreement states:

> In the event of infringement of any patent or other right that may be issued to or owned by LICENSOR [Sweports] on the ITEM, UMF may prosecute an infringement suit, in the name of LICENSOR [Sweports], if appropriate, as determined in the sole discretion of UMF after notice to LICENSOR [Sweports] of that intention. UMF may then select legal counsel and shall bear all the legal fees and costs. The balance of any recovery (in excess of attorneys [sic] fees, costs and other out-of-pocket expenses) shall be divided 80/20 between UMF and LICENSOR [Sweports], respectively. If LICENSOR [Sweports] becomes aware of infringement described above, LICENSOR [Sweports] may notify UMF of its desire to prosecute an infringement suit. If UMF has not commenced the prosecution of an infringement action with in thirty (30) days of receipt of LICENSOR's notice, LICENSOR [Sweports] may prosecute the suit . . .

Pl.'s Resp. in Opp. to Defs.' Mot.; Ex. A [ECF No. 16-1 Page ID #183].

After reviewing this language, it is clear that Sweports retained a right to prosecute an infringement suit. It is equally clear that the Agreement requires UMF to provide notice to Sweports prior to initiating an infringement suit and that Sweports shares in the proceeds of a successful suit. These are all factors which suggest that UMF did not receive "all substantial rights" to the '455 Patent. *See Alfred E. Mann Found.*, 604 F.3d at 1361-62 (holding that "a broad right to decide whether to bring suit and to control litigation is thoroughly inconsistent with an assignment" of all substantial rights); *see also Abbott Laboratories v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995) (finding that a licensor's retained right to sue alleged infringers if the exclusive licensee declined to do so precluded an exclusive license agreement from being deemed a virtual assignment of the patents-in-suit).

While UMF argues that Sweports right to sue is "illusory" since UMF could grant an alleged infringer a royalty-free sublicense, the Court disagrees. While the Agreement permits UMF to sublicense its rights, the Agreement is void of any language which suggests that UMF has the ability to grant a royalty-free sublicense. Instead, the Agreement suggests the opposite to be true. "LICENSOR [Sweports] and UMF shall share equally in the

revenues (including all advances, royalties, *minimum payments* and guaranteed payments) actually received by UMF from third parties for any sublicense of the ITEM . . . " Pl.'s Resp. in Opp. to Defs.' Mot.; Ex. A [ECF No. 16-1 Page ID #182] (emphasis added).

Moreover, Sweports has retained the right to terminate the Agreement in the event that UMF "does not introduce (offer for sale, display, advertise, or sell) the ITEM." Pl.'s Resp. in Opp. to Defs.' Mot.; Ex. A [ECF No. 16-1 Page ID #183]. This ability to terminate is yet another factor the courts consider when determining whether all substantial rights have been transferred. *New Medium Technologies, LLC*, 644 F.Supp.2d at 1051-53.

Finally, Norwex points to Sweports' right to develop "current and future products developed under the PerfectClean brand[.]" *Id.* [ECF No. 16-1, Page ID # 186]. As the Federal Circuit has held, a patent owner's "right to make and use, for its own benefit, products embodying the inventions claimed in the patent" is inconsistent with a transfer of all substantial rights. *Abbott Labs. v. Diamedix Corp.*, 47 F.3d 1128, 1132 (Fed. Cir. 1995).

Thus, looking at all the aforementioned rights Sweports retained, the Court finds Sweports did not transfer all substantial rights to UMF in the '455 Patent. Because of this, Sweports is a necessary and indispensable party who must be joined for the litigation to proceed. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007). The Court therefore dismisses UMF's

complaint without prejudice.  UMF is permitted to re-file its Complaint after Sweports' bankruptcy proceedings have concluded or the stay issued in the bankruptcy court is lifted and Sweports can be joined properly as a Plaintiff.

**IV.  <u>CONCLUSION</u>**

For the reasons stated herein, the Court Grants Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**


_____
            Harry D. Leinenweber, Judge
            United States District Court

Date:3/19/2013